**In re Dwight R. MAYLIN, Debtor.**

**Bankruptcy No. 92–10168.**

United States Bankruptcy Court,
D. Maine.

June 9, 1993.

Hugh T. Corbett, Waterville, ME, for Sherman, Sandy & Lee.

Harold J. Shapiro, Shapiro & Daly, Gardiner, ME, for debtor.

1. Unless otherwise indicated, all citations to statutory sections are to the Bankruptcy Reform Act of 1978, as amended, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code" or the "Code").

2. The facts are not in dispute. This memorandum recites pertinent facts, drawn from the parties' pleadings and papers, and sets forth conclusions of law. Fed.R.Bankr.P. 7052 and 9014.

## MEMORANDUM OF DECISION

JAMES B. HAINES, Jr., Bankruptcy Judge.

Dwight Maylin's Chapter 13 plan is before the court for confirmation. Sherman, Sandy & Lee, his former counsel in pre-petition divorce proceedings and, presently, a judgment creditor, has objected. The plan and objection raise issues under 11 U.S.C. §§ 502 and 522,[1] under Fed. R.Bankr.P. 3006 and 4003(b) and under the law as articulated by the Supreme Court in *Taylor v. Freeland & Kronz,* ── U.S. ──, 112 S.Ct. 1644, 118 L.Ed.2d 280 (1992). For the reasons set forth below I conclude that the requisite good faith inheres in Maylin's Chapter 13 plan; that, although Sherman, Sandy & Lee may contest the Maylin's exemption claim in defending his efforts to avoid its lien, the firm has not sustained its burden; and that the plan may therefore be confirmed.

### Factual and Procedural History

Sherman, Sandy & Lee served as Maylin's counsel in state court divorce proceedings that terminated in October 1991.[2] In dividing marital property, the divorce court ordered Maylin's ex-spouse, Lynn Maylin, to pay him $8,000.00 by January 1, 1992.

■ After the divorce, when Mr. Maylin did not pay his bill, Sherman, Sandy & Lee sued him in state court, seeking $5,497.60 in fees and expenses. On December 19, 1991, the state court issued an *ex parte* writ for prejudgment attachment and trustee process in the amount sought by the firm.[3] Trustee summons was served on Lynn Maylin on December 20, 1991, thereby impressing the obligation she owed Maylin with a $5,497.60 lien in Sherman, Sandy & Lee's favor.[4]

3. The writ was issued pursuant to 14 M.R.S.A. § 2601 *et seq.* "Trustee process" is Maine's procedural analogue to what other jurisdictions call pre-judgment garnishment. *Davis v. U.S. Bobbin & Shuttle Co.,* 118 Me. 285, 286, 107 A. 865 (1919). *See generally* Andrew M. Horton and Peggy L. McGehee, *Maine Civil Remedies* § 27.1 (1992).

4. 14 M.R.S.A. § 2603. The record does not disclose whether Lynn Maylin answered the trustee summons within 20 days, as required. How-

Maylin filed his Chapter 13 petition on March 9, 1992, listing the $8,000.00 due from his ex-wife as an asset.[5] Pursuant to 14 M.R.S.A. § 4422(1)(A) and (C), he claimed an exemption in $7,500.00 of the $8,000.00.[6] The § 341 meeting of creditors was held on April 27, 1992. No party objected to Maylin's claimed exemptions within the next 30 days.[7]

Sherman, Sandy & Lee filed a secured proof of claim on July 23, 1992. No party has filed an objection to that proof of claim,[8] although Maylin's plan, filed with the petition, indicated that the law firm's liens would be avoided.

The plan summary served on creditors, including Sherman, Sandy, & Lee, prior to the first hearing on the plan expressly set forth debtor's intention to avoid the firm's judicial lien pursuant to 11 U.S.C. § 522(f) and § 547. The plan was confirmed on an interim basis over the firm's objections, without prejudice, on June 9, 1992.[9]

When the Chapter 13 trustee noticed the plan for final confirmation, Sherman, Sandy & Lee asserted that this is not a good faith Chapter 13 case and opposed Maylin's motion to avoid its judicial lien. It

contends that the lien does not impair a valid exemption. Maylin argues that his plan is proposed in good faith, that he has validly claimed an exemption for $7,500.00 due him from his ex-wife, that the Sherman, Sandy & Lee judicial lien is avoidable and that his plan should be confirmed.

I directed the parties to brief the issues, including the question whether, under *Taylor v. Freeland & Kronz,* —— U.S. ——, 112 S.Ct. 1644, 118 L.Ed.2d 280, the exemption may be attacked in light of the fact that no creditor filed timely objections to exemption claims.

### Discussion

### A. Bad Faith Issues

Sherman, Sandy & Lee argues that Maylin has not initiated Chapter 13 in good faith because he was solvent.[10] According to the firm, Maylin has sufficient resources to pay off his debts without bankruptcy protection. Accordingly, it "requests that this court deny Debtor protection under the Bankruptcy Code...." Objection to Final Confirmation at 4–5. Treating the pleading as either an objection to confirmation[11] or as a motion to dismiss,[12] the record does

---

ever, failure to answer is grounds for default. 14 M.R.S.A. § 2614. In any event, the parties do not dispute that Lynn Maylin presently holds the funds owing Maylin, awaiting resolution of the pending proceedings so that she may pay them over to the proper party.

5. Schedule A listed the payment as an interest in real property. Maylin claimed $7,500.00 of it as exempt in Schedule C. Schedule F disclosed that Sherman, Sandy & Lee "has attached debtor's interest in proceeds payable to him by ex-wife that [sic] District Court awarded debtor for his interest in jointly owned residence."

6. Maine has "opted out" of the federal exemption scheme, thereby limiting its residents to state law exemptions in bankruptcy. *See* § 522(b)(1); 14 M.R.S.A. § 4425. The pertinent text of 14 M.R.S.A: § 4422(1)(A) is set forth *infra* at 614–15.

7. See n. 21, *infra,* for the text of Rule 4003(b), which sets the deadline for the trustee to object to exemption claims.

8. *See* Fed.R.Bankr.P. 3007 (objections to claims).

9. The bankruptcy courts of the District of Maine currently notice Chapter 13 plans twice; the

first time for "interim confirmation" and the second for "final confirmation." Upon interim confirmation the trustee may begin distributing funds to secured creditors whose claims are undisputed. Objections made at interim confirmation are preserved for consideration and heard at final confirmation.

Proposed local rules revisions will abbreviate the process by authorizing entry of an interim order for distribution immediately following the meeting of creditors.

10. The schedules disclose $36,593.00 in assets and $9,997.68 in liabilities. Maylin claimed $36,093 in exemptions (principally in retirement benefits).

11. Section 1327(a) provides that a Chapter 13 plan shall be confirmed if Maylin demonstrates, *inter alia,* that "the plan has been proposed in good faith and not by any means forbidden by law...."

12. The Sherman law firm has not moved for dismissal. Fed.R.Bankr.P. 9013 states, in pertinent part, "A request for an order ... shall be by written motion...." "Although § 1307(c) mentions several examples of cause which justify dismissal or conversion, that list is not exclu-

not support a finding that the case was initiated, or the plan proposed, in bad faith.

■ The Bankruptcy Code does not require that debtors be insolvent to obtain Chapter 13 relief. *Compare* § 109(e) (Chapter 13 eligibility) *with* § 109(c)(3) (requiring debtors under Chapter 9 to be insolvent). *See Connell v. Coastal Cable T.V., Inc. (In re Coastal T.V., Inc.),* 709 F.2d 762, 764 (1st Cir.1983) (insolvency is not required to qualify for Chapter 11 bankruptcy protection).[13]

■ Apart from the erroneous assertion that Maylin is solvent, Sherman, Sandy & Lee's contention that Maylin is proceeding in bad faith is without foundation.[14] The objection is overruled.

## B. Lien Avoidance and Secured Creditors.

From the outset, Maylin's plan has proposed avoiding the Sherman, Sandy & Lee judicial lien. It proposed to do so under either § 522(f) or § 547(b).[15]

■ To begin, § 522(f) is available to the debtor. He may proceed thereunder by motion to avoid a judicial lien that impairs an exemption.[16] Section 547(b) generally is not. *Hill v. Fidelity Fin. Serv. (In re Hill),* 152 B.R. 204, 205–206 (Bankr. S.D.Ohio 1993); *In re Jernigan,* 130 B.R. at 887 (collecting cases and noting that, if debtors are able to use §§ 544–550 powers, they must do so for the benefit of the estate). A debtor may avoid a judicial lien as a preference by invoking § 522(h). However, § 522(h) is available only if, *inter alia,* the debtor could have exempted property had the trustee recovered it under § 544, 545, 547, 548, 549, or 724.[17]

By either route, the threshold inquiry is whether Maylin is entitled to an exemption in the property against which the lien lies, in this case the funds due him from his ex-wife.

### 1. What's the Problem?

■ Sherman, Sandy & Lee has received adequate, accurate notice of the nature of Maylin's plan, including its provisions call-

---

sive. Lack of good faith is a sufficient ground to grant a motion to dismiss." *In re Roderick,* 20 B.R. 485, 486 (Bankr.D.R.I.1982) (cite omitted). *See generally In re Jernigan,* 130 B.R. 879, 887–94 (discussing good faith in an historical perspective).

**13.** In any event, exempt assets are not counted in determining solvency. The Code's definition of "insolvent," § 101(32)(A)(ii) excludes "property that may be exempted from property of the estate under section 522 of this title...." *See Lewis v. Maloon (In re Lewis),* 94 B.R. 789, 793 (Bankr.D.Mass.1988). Even if one were to ignore Maylin's disputed $7,500 exemption claim, in light of other exempt assets, he indisputably was insolvent when he filed his petition.

**14.** The Sherman firm proffered no evidence to buttress its "bad faith" assertion, relying only on Maylin's schedules. The schedules and the plan demonstrate, however, that Maylin is unable to pay his debts as they come due. He is undertaking to devote all of his projected disposable income to his plan for the next three years. *See* § 1325(b). The firm does not claim that the plan is deficient under any other provision of § 1325.

**15.** The Chapter 13 plan, filed with the petition, contains a boilerplate motion to avoid liens under § 522(b). Given that § 522(b) does not concern lien avoidance, and given that the plan

summary specifies § 522(f), the court interprets the motion as arising under § 522(f).

Further, as discussed in note 17 *infra,* a debtor's direct access to § 547 is limited by § 522(h). The court interprets Maylin's reference to § 547 as a motion arising under § 522(h).

**16.** Sec. 522(f) states, in pertinent part, "[T]he debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled ... if such lien is—(1) a judicial lien...." Sherman, Sandy & Lee's lien is a judicial lien with the meaning of the Code. 11 U.S.C. § 101(36).

Fed.R.Bankr.P. 4003(d) provides that, "A proceeding by the debtor to avoid a lien ... under § 522(f) of the Code shall be by motion in accordance with Rule 9014."

**17.** Section 522(h) allows the debtor to avoid a transfer on three conditions: 1) the debtor could have exempted the property under section 522(g)(1), that is, the property qualifies for an exemption under section 522(b), the transfer was voluntary, and the debtor did not conceal the property; 2) the transfer was avoidable by the trustee; and 3) the trustee did not attempt to avoid the transfer. *Sanborn v. Bangor Fed. Credit Union (In re Sanborn),* 29 B.R. 655, 656 (Bankr.D.Me.1983) (footnote omitted).

ing for avoidance of the Sherman, Sandy & Lee lien. Each side has had a full opportunity to make its case.[18] But the question remains whether Sherman, Sandy & Lee, which holds a charge against a specific asset, can now contest the *bona fides* of Maylin's exemption claim in that asset.

 The question stems from an apparent conflict in the law. The Supreme Court held in *Taylor v. Freeland & Kronz* that, under § 522(*l*) and Fed.R.Bankr.P. 4003(b), creditors may not object to a debtor's claim of exemptions later than 30 days from the § 341 meeting. But to require a secured creditor to file a *Taylor*-timely objection to an exemption claimed in property subject to its lien or lose its ability to defend a § 522(f) lien avoidance motion by contesting the exemption claim would be at odds with accepted principles touching upon the role that secured creditors play in bankruptcy.[19] It is fundamental that secured creditors may remain aloof from bankruptcy. Unless a secured creditor is hailed into court and, after appropriate notice and hearing, an order is entered modi-

fying its rights, its lien "passes through" unaffected.

### a. *Taylor's Holding.*

 In *Taylor v. Freeland & Kronz,* — U.S. ——, 112 S.Ct. 1644, 118 L.Ed.2d 280 the Supreme Court held that § 522(*l*) and Fed.R.Bankr.B. 4003(b) set a strict deadline for objecting to exemptions. The former provides that, unless a party in interest objects, property listed by the debtor as exempt "is exempt;"[20] the latter provides that creditors must file objections to exemptions within 30 days of the § 341 meeting.[21] With or without a statutory basis for it, a debtor's claim to exemption may not be challenged beyond Rule 4003(b)'s 30 day period. —— U.S. at ——, 112 S.Ct. at 1648. In the absence of timely objection, the debtor's claimed exemptions are established under § 522(*l*).

Rule 4003(b) governs objections to exemptions brought by "the trustee or *any* creditor*.*" *Taylor* describes the rule's operation in terms of the time within which "creditors" must file objections.[22] "By

---

**18.** Some courts have questioned the procedural propriety of litigating lien avoidance in the confirmation context. *See, e.g., Piedmont Trust Bank v. Linkous (In re Linkous),* 990 F.2d 160 (4th Cir.1993) (§ 506 lien stripping); *Simmons v. Savell (In re Simmons),* 765 F.2d 547 (5th Cir.1985) (same). Courts considering the issue have articulated the general rule that plan confirmation is *res judicata, Sun Finance Co., Inc. v. Howard (In re Howard),* 972 F.2d 639, 641 (5th Cir.1992), but have recognized the necessity that creditors whose property rights are subject to divestment by confirmation be given notice that brings home to them the significance of confirmation as it affects those rights. *In re Jones,* 152 B.R. 155, 162 n. 8 (Bankr.E.D.Mich.1993) (collecting cases and concluding that lien stripping is properly considered at a plan confirmation hearing); *In re Terranova,* 152 B.R. 20, 22 n. 2 (Bankr.D.Conn.1993) (same); *In re Martin,* 130 B.R. 951, 956 (Bankr.N.D.Iowa 1991) (collecting cases).

There was no actual notice problem here. The interim confirmation summary gave direct notice that the lien was to be avoided under § 547 or § 522(f) upon final confirmation of the plan. Upon receiving that notice, the Sherman firm objected to confirmation, converting the confirmation hearing into a contested matter. Fed.R.Bankr.P. 3020(b)(1) and 9014. The case proceeded in a litigation posture for nearly a year. *See* 5 Lawrence P. King, *Collier on Bank-*

*ruptcy* ¶ 1324.01[3] at 1324–5 (15th ed. 1993) (hereinafter *"Collier"*).

**19.** Of course, the same result would hold for a creditor defending a debtor's § 522(h) action. For purposes of this case, the issues are identical under §§ 522(f) & 522(h). The discussion will proceed with primary reference to Maylin's § 522(f) lien avoidance motion.

**20.** The debtor shall file a list of property that the debtor claims as exempt under subsection (b) of this section. If the debtor does not file such a list, a dependent of the debtor may file such a list, or may claim property as exempt from property of the estate on behalf of the debtor. Unless a party in interest objects, the property claimed as exempt on such list is exempt.
11 U.S.C. § 522(*l*).

**21.** Fed.R.Bankr.P. 4003(b) provides:

The trustee or any creditor may file objections to the list of property claimed as exempt within 30 days after the conclusion of the meeting of creditors held pursuant to Rule 2003(a) or the filing of any amendment to the list or any supplemental schedules unless, within such period, further time is granted by the court.

**22.** The term "creditor" includes those with secured claims. *See* 11 U.S.C. § 101(5) (defining

negative implication, the Rule indicates that creditors may not object after 30 days 'unless, within such period, further time is granted by the court.'" —— U.S. at ——, 112 S.Ct. at 1648. As the lone dissenter noted, "The Court's disposition of this case is straightforward. Because it regards the meaning of the statute and rule as 'plain,' that is the end of the case." —— U.S. at ——, 112 S.Ct. at 1652 (Stevens, J., dissenting).[23]

b. *Secured Creditors and Bankruptcy.*

██ Section 501 provides that a creditor may file a proof of claim. Section 502(a) provides that if a proof of claim is filed, the claim is "deemed allowed, unless a party in interest ... objects." If an objection is filed, the court is to determine its amount "after notice and a hearing." Section 502(b). The court may determine the extent to which a claim is secured in an adversary proceeding. *See* § 506(a); Fed. R.Bankr.P. 3007, 7001(2).

██ A secured creditor may, but need not, file a proof of claim. Under the express provisions of § 501, if it does so, and no objection is filed, its secured claim is "deemed allowed." If it files no proof of claim and no action is taken with regard to its lien, the lien is unaffected by bankruptcy. In other words, unless the secured creditor is hailed into bankruptcy court to respond to an effort to alter, amend or avoid its position, it may ignore the bankruptcy proceedings. The lien passes through bankruptcy. "Codifying the rule of *Long v. Bullard,* 117 U.S. 617, 6 S.Ct. 917, 29 L.Ed. 1004 (1886), the Code provides that a creditor's right to foreclose on

the [lien] survives or passes through the bankruptcy." *Johnson v. Home State Bank,* 501 U.S. ——, ——, 111 S.Ct. 2150, 2153, 115 L.Ed.2d 66 (1991). *Accord, Dewsnup v. Timm,* 502 U.S. ——, ——, 112 S.Ct. 773, 778, 116 L.Ed.2d 903 (1992); *Farrey v. Sanderfoot,* 500 U.S. ——, ——, 111 S.Ct. 1825, 1829, 114 L.Ed.2d 337 (1991) ("ordinarily, liens and other secured interests survive bankruptcy...."); *Chandler Bank of Lyons v. Ray,* 804 F.2d 577, 579 (10th Cir.1986) ("for sections in the Code which relate to automatic stays and to lien avoidance to have any substance at all necessarily leads to the conclusion that unavoided liens pass through § 506(d) without any action by the lienholder"); *Estate of Lellock v. Prudential Ins. Co. of America,* 811 F.2d 186, 189 (3d Cir.1987) ("valid liens that have not been disallowed or avoided survive the bankruptcy discharge of the underlying debt"); *J. Catton Farms, Inc. v. First Nat'l Bank of Chicago,* 779 F.2d 1242 (7th Cir.1985); 3 *Collier* ¶ 506.07.

██ The rule is axiomatic. When a confirmed plan purports to diminish or defeat a secured creditor's position, but the secured creditor has not been furnished meaningful notice and an opportunity to be heard before confirmation, that creditor may obtain relief from the order of confirmation. *See, e.g., In re Linkous,* 990 F.2d 160, *In re Howard,* 972 F.2d at 641; *In re Simmons,* 765 F.2d 547; *In re Hartford,* 7 B.R. 914, 916 (Bankr.D.Me.1981).

2. *Taylor and § 522(f).*

The overwhelming majority of cases follow *Taylor* closely.[24] *Taylor* has quickly

---

"claim" to include secured claims); and § 101(10) (defining "creditor" as entity holding a claim).

**·23.** In at least one respect, the language of the *Taylor* majority is at odds with the rule. Rule 4003(b) commences the running of the 30 day objection period from "the conclusion of the meeting of creditors ... or the filing of any amendment to the list or supplemental schedules...." *Taylor,* however, sets "the initial creditors' meeting" as the date when the period begins to run. —— U.S. at ——, 112 S.Ct. at 1648. Given the possibility that the meeting may be "adjourned from time to time," Fed. R.Bankr.P. 2003(e), without conclusion, the

Court's formulation departs from the language of Rule 4003(b). Under some circumstances that do not come into play here, the difference could be critical. *Cf.* Fed.R.Bankr.P. 4007(c) (complaint to determine dischargeability of debt "must be filed not later than 60 days following the *first date set* for the meeting of creditors ...") (emphasis supplied).

**24.** *See, e.g., In re Kaiser,* 149 B.R. 718, 719 (Bankr.M.D.Fla.1993) (Exemption allowed "even if there is no colorable basis for claiming the exemption"); *In re Fulton,* 148 B.R. 838 (Bankr.S.D.Tex.1992); *In re Serrick,* 146 B.R. 192 (Bankr.N.D.Ohio 1992) (Although Trustee alleged that she did not receive debtors' amend-

come to stand for the proposition that in bankruptcy, adherence to statutory deadlines is fundamental.[25]

*Taylor*'s teaching orders the rights of debtors and the estate (and, thus, the rights of unsecured creditors and their proxy, the trustee) by imposing a bright line rule. It fixes a definite point at which the question of what property remains within the estate, and what property will be excluded by exemption, is to be determined.[26] *See Morgan v. FDIC (In re Morgan),* 149 B.R. 147, 152 (Bankr.9th Cir. 1993) ("Section 522(*l* ) ... allows the trustee to promptly determine what assets of the debtor are available for distribution to creditors.") Obviously, *Taylor* has no impact on a secured creditor's lien against a specific asset unless that asset is the subject of an exemption claim.

■ But *Taylor* broadly states that, if neither the trustee nor a creditor objects, an exemption claim is established against all: even if the exemption is without foundation in law. Thus, to the extent that the rule establishes as exempt rights or value that would not otherwise be exempt, it can, in conjunction with the debtor's lien avoidance rights, reduce or eliminate the secured creditor's charge against specific assets, or

against some part of their value. *See, e.g.,* §§ 522(c)(2)(A)(i) and 522(f).[27]

■ A § 522(f) lien avoidance motion is one procedure by which a debtor hails a secured creditor into bankruptcy court and obtains a determination of rights. It can serve as the functional equivalent of an objection to claim. *See* Fed.R.Bankr.P. 4003(d) (lien avoidance proceeding under § 522(f) brought by motion). *See also* Advisory Comments to Fed.R.Bankr.P. 3007 (objection to claim is a contested matter); Advisory Comments to Fed.R.Bankr.P. 4003 (motion under § 522(f) is a contested matter); Fed.R.Bankr.P. 9014 (service of motions is made pursuant to rules governing service of summons and complaint).

■ Nevertheless, secured creditors responding to lien avoidance motions would be deprived of important defenses if they forfeited their right to contest the debtor's entitlement to the exemption upon which the motion is based because they had, up until that time, exercised the accepted option not to participate in the bankruptcy proceedings. Certainly, other defenses to a debtor's § 522(f) and § 522(h) initiatives may lie. *See, e.g., Farrey v. Sanderfoot,* 500 U.S. ——, 111 S.Ct. 1825, 114 L.Ed.2d 337 (exemption may be subject to preexisting encumbrances); *In re Saturley,* 149

---

ed exemption list, untimely objection to exemption cannot be allowed); *In re Egan,* 142 B.R. 730 (Bankr.E.D.Pa.1992); *U.S. v. Blackstone (In re Blackstone),* 142 B.R. 146 (Bankr.N.D.Tex. 1992); *In re Arevalo,* 142 B.R. 111 (Bankr.D.N.J. 1992); *In re Kidd,* 142 B.R. 238 (Bankr.S.D.Ohio 1992); *In re Cavalieri,* 142 B.R. 710 (Bankr. E.D.Pa.1992); *Miller v. Steinberg (In re Marilyn Steinberg Enterprises Inc.),* 141 B.R. 587 (Bankr. E.D.Pa.1992); *In re Moreland,* 142 B.R. 221 (Bankr.S.D.Ohio 1992).

**25.** *Taylor* has been applied to support strict adherence to time limits in many different phases of bankruptcy cases. *See, e.g., In re Chappell,* 984 F.2d 775 (7th Cir.1993) (Upon reopening a case, an oversecured mortgagee could not object on ground that the Chapter 13 plan innocently did not provide interest); *In re Danielson,* 981 F.2d 296 (7th Cir.1992) (Late proof of claim is barred under B.R. 3004); *Nicholson v. Isaacman (In re Isaacman),* 149 B.R. 502 (Bankr. W.D.Tenn.1993) (§ 523 complaint not timely); *Saturley v. Casco Northern Bank, N.A. (In re Saturley),* 149 B.R. 245, 247 n. 6 (Bankr.D.Me. 1993) (Secured creditors could not object to abandonment by the trustee on grounds that the debtors did not have a valid exemption); *Malloy*

*v. Frank (In re Frank),* 146 B.R. 851 (Bankr. N.D.Okla.1992) (Trustee is barred from filing a late discharge revocation proceeding alleging fraudulent concealment).

**26.** Sec. 522(b) states, "Notwithstanding section 541 of this title, the debtor may exempt from property of the estate ..." property enumerated under appropriate exemption laws. *See* n. 6 *supra.*

**27.** This is true under either the state or federal exemption scheme. In an opt-out state a judicial lien generally attaches to value in property above the exemption level. *See, e.g., In re Cerniglia,* 137 B.R. 722, 726 (Bankr.N.D.Ill.1992). *See generally, In re Saturley,* 149 B.R. at 249–251. In a non-opt-out state the creditor's lien interest is held subject to a potential bankruptcy and federal exemption elections. *See* Haines, *Section 522's Opt–Out Clause: Debtor's Exemptions in a Sorry State,* 1983 Ariz.St.L.J. 1, 6 (discussing bankruptcy reformers' early intention to create minimum national exemptions in enacting the Bankruptcy Code).

B.R. at 249 (lien avoidance not available where debtor has no interest of economic value in property claimed as exempt). But the defending secured creditor cannot fairly be deprived of its opportunity to defend by disputing the exemption because it did not review the debtor's schedules and object to exemption claims in compliance with Rule 4003(b) and *Taylor*.[28]

I conclude that the *Taylor* Court, which considered only a trustee's late-filed objection to the debtor's exemption in light of § 522(*l*) and Rule 4003(b), did not overrule a fundamental pillar of bankruptcy law *sub silentio*.[29] *Taylor* cannot not mean that secured creditors lose important rights by doing exactly what the law has long said they can do: Ignore the bankruptcy proceedings until hailed into court.

*Taylor* extends as far as its holding, but not as far as its dictum. It confirms Rule 4003(b)'s deadline for exemption objections made by the bankruptcy trustee (and the unsecured creditors who look to the estate for payment). Its rule does not foreclose a secured creditor from defending a § 522(f) or § 522(h) action by denying that the property involved is exempt under applicable law.[30] Notwithstanding Rule 4003(b) and *Taylor*, affected secured creditors may contest the *bona fides* of an exemption in defense of a § 522(f) lien avoidance motion.[31]

Thus, Sherman, Sandy & Lee may contest the Maylin's claimed exemption in defense of his efforts to avoid their lien as part of his Chapter 13 plan.

## C. Maylin's Exemption Claim

### 1. Burden of Proof

In the context of a § 522(f) proceeding, the question remains as to who

---

**28.** Lien creditors hold constitutionally cognizable property rights in assets against which their liens lie. *See U.S. v. Security Industrial Bank*, 459 U.S. 70, 77, 103 S.Ct. 407, 411–12, 74 L.Ed.2d 235 (1982) (considering retroactive application of § 522(f)(2) and commenting that "the total destruction by the Government of all value of these liens, which constitute compensable property, has every possible element of a Fifth Amendment 'taking' and is not a 'mere incidence' of a valid regulatory measure."), quoting *Armstrong v. U.S.*, 364 U.S. 40, 48, 80 S.Ct. 1563, 1568–69, 4 L.Ed.2d 1554 (1960).

**29.** *Taylor* makes no mention of §§ 501 and 502(a) or of the line of cases extending from *Long v. Bullard* through *Johnson v. Home State Bank*.

**30.** A similar, but narrower, result was reached in *Braddock v. U.S. (In re Braddock)*, 149 B.R. 636 (Bankr.D.Mont.1992). The debtors argued that, absent timely objection, their homestead exemption prevailed over a tax lien. The court held for the IRS:
> [W]e reject the Debtors' argument that *Taylor* stands for the proposition that the holder of a properly filed tax lien must also file an objection to a homestead exemption in order to hold the homestead liable. Such a tax lien is specifically excepted from the general rule by the language of § 522(c)(2)(B).

149 B.R. at 639.

Other courts have sought to avoid *Taylor's* rule in § 522(f) proceedings through technical construction of the Code and parsing *Taylor's* language. Recently, two cases from the Ninth Circuit held that an exemption arising under § 522(*l*) does not arise under § 522(b), and thus cannot support § 522(f) lien avoidance. *Morgan v. FDIC (In re Morgan)*, 149 B.R. at 151; *In re Mohring*, 142 B.R. at 392. This argument was one prong of Justice Stevens' dissent in *Taylor*, —— U.S. at ——, 112 S.Ct. at 1652, and thus was rejected by *Taylor's* majority. I find such efforts unconvincing and, in light of today's holding, unnecessary.

**31.** In so holding, I take note of two prior decisions of this court with similarities to the case at bar.

*In re Kingsbury*, 124 B.R. 146 (Bankr.D.Me.), held that the trustee may challenge a claimed exemption after the Rule 4003(b) deadline on the ground that the exemption was asserted without a good-faith statutory basis. *Taylor* overruled *Kingsbury*: "We have no authority to limit the application of § 522(*l*) to exemptions claimed in good faith." *Taylor v. Freeland & Kronz*, —— U.S. at ——, 112 S.Ct. at 1649.

In *In re Saturley*, 149 B.R. 245, secured creditors defending a § 522(f) motion were not heard to challenge one of a debtor's exemption claims. They had attempted to do so earlier in the proceedings, as well, but on both occasions their efforts were rebuffed as untimely. 149 B.R. at 247 n. 6. On neither occasion did the creditors assert that they should not be bound by *Taylor's* rule. *Saturley* was ultimately decided (against the debtors) on other grounds. However, to the extent that *Saturley's* dictum embraces the proposition that secured creditors must file objections to exemptions within 30 days of the meeting of creditors or forfeit their ability defend a subsequent lien avoidance action by challenging the exemption involved, 149 B.R. at 247, it is not the law.

bears the burden of proof on the issue of a challenged exemption claim, the debtor or the defending lien creditor? Generally, a movant bears the burden of proof on the elements necessary to warrant the relief he or she seeks. "The responsibility to produce competent evidence on the affirmative of an issue is with the party asserting such position...." *Buco v. Salvatore (In re Salvatore)*, 46 B.R. 247, 253 (Bankr.D.R.I. 1984). Thus, the debtor seeking to avoid a lien might bear the burden. But, in broader context, Rule 4003(c) places the burden of proof on a party objecting to a debtor's exemption claim.[32] And the rule reflects the Code provision making a debtor's properly listed exemptions presumptively valid. 11 U.S.C. § 522(*l*). *See Rouillard v. Tardiff (In re Tardiff)*, 38 B.R. 974, 976 (Bankr.D.Me.1984); 8 *Collier* ¶ 4003.05.

■ The issue may be resolved straightforwardly. First, the debtor does bear the burden of proof on elements essential to lien avoidance. *See In re Sherwood*, 79 B.R. 399, 400 (Bankr.W.D.Wis. 1986); *In re Shands*, 57 B.R. 49 (Bankr. D.S.C.1985); *In re Piambino*, 45 B.R. 243 (Bankr.S.D.Fla.1984); 2 David G. Epstein, Steven H. Nickles & James J. White, *Bankruptcy*, § 8–29 at 568. But, consistent with § 522(*l*), Rule 4003 and *Taylor*, the debtor can establish entitlement to an exemption, *prima facie*, by listing it specifically on his or her the schedules, designating clearly the basis for each exemption

claimed. *Cf., e.g., Hyman v. Plotkin (In re Hyman)*, 967 F.2d 1316, 1319 (9th Cir. 1992) (debtors' entry of homestead exemption at $45,000 did not provide notice that debtors asserted homestead exemption in excess of $45,000). In the face of such a showing, the burden shifts to the creditor challenging the exemption as part of its § 522(f) defense to prove that the exemption claim is not proper.

■ Such an allocation of the burden of proof in § 522(f) proceedings is most consistent with other provisions of the statute, e.g., § 522(*l*), and with the Code's policies regarding exemptions and lien avoidance. "Subsection (f) protects the debtor's exemptions, his discharge, and thus his fresh start...." H.R.Rep. No. 595, 95th Cong., 1st Sess. 362 (1977); S.Rep. No. 989, 95th Cong., 2d Sess. 76 (1978), U.S.C.C.A.N. 1978, 5787, 6318, 5862 (concerning § 522).[33]

### 2. *The Merits of the Exemption Claim.*

Maylin claims such an exemption in $7,500.00 of the $8,000.00 due him from his ex-wife under 14 M.R.S.A. §§ 4422(1)(A) and (C). When the case was filed, 14 M.R.S.A. § 4422(1)(A) authorized debtors to exempt from the bankruptcy estate "the debtor's aggregate interest, not to exceed $7,500 in value, in real or personal property that the debtor or a dependent of the debtor uses as a residence...."[34] The statute

---

**32. Burden of Proof.** In any hearing under this rule, the objecting party has the burden of proving that the exemptions are not properly claimed. After hearing on notice, the court shall determine the issues presented by the objections.
Fed.R.Bankr.P. 4003(c).

**33.** Other courts have considered the burden of proof where a debtor seeks to employ a so-called § 522(*l*) "default exemption" in lien avoidance proceedings.

*In re Indvik*, 118 B.R. 993 (Bankr.N.D.Iowa 1990), holds that "the debtor may not use the exempt status of the property as proof by preclusion that the exempt property is appropriate property for lien avoidance." 118 B.R. at 1007. This court concurs: The approach applied here does not rely on issue preclusion.

*In re Frazier*, 104 B.R. 255 (Bankr.N.D.Cal. 1989), relies on Rule 4003(c) in placing the burden on the objecting creditor to prove that the items were not within the claimed catego-

ries. 104 B.R. at 260. It held that the objecting creditor, having failed to submit admissible evidence on the question, did not meet this burden. That approach is also consistent with today's decision.

Finally, I again disagree with *In re Mohring*, 142 B.R. 389 (also addressed in note 30 *supra*). *Mohring* held that the debtor, as proponent of a motion, has the burden of proof. "Federal Rule of Bankruptcy Procedure 4003(c) ... does not compel a contrary conclusion. Neither the motion to avoid lien nor opposition to such a motion is an objection to claim of exemption." 142 B.R. at 392 n. 9 (cite·omitted). Although the *rule* does not *compel* a different holding, I conclude that the Code and its underlying policy favor it.

**34.** 14 M.R.S.A. § 4422(1)(A) was amended, effective after the petition date, to allow exemptions of up to $12,500. Laws 1991, c. 741, § 1, subsec. 1, ¶ A. Under § 522(b)(2)(A), Maylin is

also provides that the exemption extends to "proceeds" of the "sale" of such exempt property for six months from the date that the debtor receives them "for purposes of reinvesting in a residence." 14 M.R.S.A. § 4422(1)(C).

Maylin listed $7,500.00 of the $8,000.00 due him from his wife as exempt property, citing the statutes underlying his claim. By so doing, he has carried his burden on the issue of his entitlement to the exemption. Sherman, Sandy & Lee has proffered a quitclaim deed and records of the divorce proceedings to show that the exemption claim is improper.[35] It argues that, as a matter of law, the funds owed to Maylin are not proceeds of a "sale" of exempt property, that Maylin has not demonstrated an intention to reinvest the funds in a residence and that the divorce judgment does not designate the $8,000.00 payment as *quid pro quo* for his interest in his former residence. In response, Maylin has filed his own affidavit, unchallenged and uncontroverted.

In consideration for a settlement (later repudiated), Maylin transferred his interest in the marital residence to his wife by quitclaim deed before entry of the final divorce decree. Nevertheless, the divorce court concluded that the property remained marital property, included $53,000 of its equity in its property division calculations and disposed of Maylin's interest. Findings at 2; Divorce Judgment at 2. The judgment allocated valuable assets between the parties,[36] considered the parties' circumstances and took note of pertinent statutory factors in settling the marital estate and ordering Lynn Maylin to pay the debtor $8,000.00.

True, the judgment itself does not specify what portion of the $8,000 is attribut-

able to the debtor's interest in the Hallowell property. But attributing that sum to the real estate is a reasonable construction of the judgment. Sherman, Sandy & Lee has introduced nothing to prove the contrary.

 Moreover, Sherman, Sandy & Lee has not demonstrated that other prerequisites to the exemption are lacking. The divorce judgment required Maylin to part with his remaining interest in the marital residence. Such a disposition of rights in return for money qualifies as a "sale" under 14 M.R.S.A. § 4422(1)(C) in light of the liberal construction appropriate to applications of the exemption statute.[37] *See In re Grindal*, 30 B.R. 651, 653 (Bankr. D.Me.1983). Maylin's dependents lived in the property even after he left it. Both the claim of exemption and Maylin's affidavit, submitted to answer Sherman, Sandy & Lee's objection, establish that Maylin intends to use the funds to acquire a new residence.

3. *Lien Avoidance and Confirmation.*

Sherman, Sandy & Lee does not contest any other aspect of the § 522(f) motion. I therefore conclude that its judicial lien may be avoided to the extent it impairs the exemption to which Maylin would otherwise be entitled, i.e. $7,500.00. Maylin asks no more.

With the lien avoided, there remain no other obstacles to confirmation of Maylin's Chapter 13 plan.

*Conclusion*

The judicial lien impairing the debtor's $7,500.00 exemption in proceeds from the disposition of his residence shall be avoided

---

entitled to claim state-law exemptions "applicable on the date of the filing of the petition...."

**35.** Those records, appended to the firm's objection to confirmation, have not been objected to by any party. They include the state court judgment ("Divorce Judgment"), findings of fact ("Findings"), child support worksheet and a post-judgment motion and order and are properly part of the record in these proceedings.

**36.** The judgment includes allocations of the real property, three automobiles, state retirement funds, an investment fund and other personal property. *Id.* at 3.

**37.** 14 M.R.S.A. § 4422(1)(C) states, "That portion of the proceeds from any sale of property which is exempt under this section shall be exempt for a period of 6 months from the date of receipt of such proceeds for purposes of reinvesting in a residence within that period."

to the extent that it impairs the exemption. The debtor's Chapter 13 plan will be confirmed.

A separate order will issue forthwith.